**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **MAJK SELIMI,** | **Civil Action No.  22-5944 (MCA)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM & ORDER** |
| **OSCAR AVILES,** | |
| **Defendant.** | |

Plaintiff Majk Selimi ("Plaintiff"), currently confined at Hudson County Correctional Center ("HCCC"), seeks to bring this civil action *in forma pauperis*, without prepayment of fees or security, asserting claims pursuant to 42 U.S.C. § 1983.  At this time, the Court grants the IFP application.  *See* 28 U.S.C. § 1915.  Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

In the Complaint, Plaintiff alleges he contracted COVID-19 at HCCC.  Complaint at 6. Plaintiff further alleges that he asked a unidentified nurse for medical attention, but the nurse told him there was nothing the medical department could do and instructed him to stay in his cell for five days.  *Id.*  Plaintiff alleges that this is the second time he has caught COVID-19, and the medical department at the jail refuses to treat him or provide adequate medical care.  *Id.*  Plaintiff alleges in passing that COVID-19 "almost killed him," *id.* at 5, but he does not provide any other facts about his COVID-19 symptoms, the treatment he sought to receive, or the individual or individuals who allegedly denied him medical care.

Plaintiff has sued only Oscar Aviles, the Warden of HCCC, and appears to blame Aviles for failing to stop the spread of COVID-19 at HCCC.  Plaintiff refers to COVID-19 as a "deadly virus" and alleges that Aviles has not sought "help" from the Health Department or sought "protective equipment" to stop the virus from spreading at HCCC.  Complaint at 5-6.  Plaintiff also  alleges that "they" are trying to keep the deaths at HCCC "hush hush" and that Aviles has not "reached out" for hand sanitizer, or cleaning supplies.  *Id.* at 6.  Plaintiff also mentions "protocols [for] distancing" and "policies for inmates and staff", but he provides no other facts about these issues.  *Id.*  Plaintiff also alleges that Aviles did not respond to Plaintiff's three grievances and does not answer his phone.  *Id.* at 5.

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as the standard for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted).  Conclusory allegations do not suffice.  *See id.* Because Plaintiff is proceeding pro se, the Court construes his allegations liberally.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The Court construes Plaintiff to raise his claims for relief pursuant to 42 U.S.C. § 1983.[1] "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[1] The Court does not construe Plaintiff to raise any state law claims.

The Court liberally construes Plaintiff to allege that his conditions of confinement amount to punishment, *see Bell v. Wolfish*, 441 U.S. 520, 538 (1979), and that Aviles, as Warden of HCCC, violated his constitutional rights by failing to stop the spread of COVID-19 at HCCC.  Since Plaintiff is a pretrial detainee, the Fourteenth Amendment governs his claim regarding his conditions of confinement at Hudson County Jail.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

There are two basic ways that a supervisors, like Aviles, may be held liable under § 1983 – through direct participation or through policymaking.  With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").  A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original).  Policy claims also have specific pleading requirements.  "[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989));

*see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), rev'd on other grounds by *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)).

In addition to pleading personal involvement, a Plaintiff must also plead sufficient facts showing that his conditions of confinement violate the Constitution.   "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).  Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542.  Additionally, "'a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Here, Plaintiff has not provided sufficient facts about the objective or subjective components of his conditions of confinement claim.

With respect to the objective component, Plaintiff states that Aviles failed to seek help from the Health Department, but it is unclear what "help" Aviles should have sought from the Health Department, and how this assistance would have prevented the spread of COVID-19 at

HCCC.  Plaintiff also states that Aviles failed to obtain "protective equipment" or "reach out" for cleaning supplies and hand sanitizer, but he does not provide sufficient facts about these or other deprivations he experienced at HCCC.  For instance, Plaintiff does not provide any facts about duration of time inmate lacked protective equipment, cleaning supplies, and hand sanitizer, whether inmates had access to alternatives, such as soap and masks, and whether there were other unsanitary or dangerous conditions at HCCC during this timeframe.  As such, the Court is unable to assess whether these deprivations are serious and prolonged enough to violate the Fourteenth Amendment.

Plaintiff also fails to provide sufficient facts showing that Aviles was on notice that inmates lacked protective equipment, cleaning supplies, or hand sanitizer and acted with deliberate indifference to a serious risk of harm.  Although Plaintiff alleges that Aviles failed to respond to Plaintiff's grievances, a prison official's failure to respond to grievances does not amount to personal involvement or state a separate claim for relief.  *See Mincy v. Chmielsewski*, 508 F. App'x. 99, 104 (3d Cir. 2013) (An "officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *see also Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa.1997), aff'd, 142 F.3d 430 (3d Cir.1998) (stating prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Plaintiff also briefly mentions policies and protocols at HCCC (or a lack thereof).  In order to state a claim that Aviles created deficiencies policies or protocols to prevent the spread of COVID-19, Plaintiff would need to provide facts showing that there were <u>specific</u> policies or practices that Aviles failed to employ, that the specific policies or protocols that were in place created an unreasonable risk of injury to Plaintiff or inmates in general, and that Aviles was on notice that the existing policies or protocols would result in such injuries, but failed to act.  *Beers-*

*Capitol*, 256 F.3d at 133–34.  Here, Plaintiff does not plead any of these elements, and thus fails to state a policy claim against Aviles.

For these reasons, Plaintiff's Fourteenth Amendment claims about his conditions of confinement fail to state a claim for relief as to Aviles and are dismissed <u>without prejudice</u> pursuant to the Court's screening authority.

Plaintiff also alleges that he received inadequate medical care after he contracted COVID-19.  The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  As a pretrial detainee, Plaintiff's right to adequate medical care also arises under the Due Process Clause of the Fourteenth Amendment.  *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  In order to state a claim for relief, Plaintiff must show a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  *See Natale*, 318 F.3d at 582 (citation omitted).

Plaintiff has sued only Aviles, but it is well-settled that *respondeat superior* is not a basis for section 1983 liability for supervisors.[2]  As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d

---

[2] Plaintiff also alleges that the medical department and an unidentified nurse denied him adequate care, but he has not named the medical department or the nurse as defendants.  Even if Plaintiff had sued the medical department at HCCC, this entity is not a proper defendant under 42 U.S.C. § 1983.  *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (concluding that the state prison medical department could not be sued under Section 1983 since it is not a person); *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (citing *Fischer* and concluding the same). Plaintiff could potentially proceed against the nurse who allegedly refused to provide him with medical care after he contracted COVID-19.  To do so, Plaintiff would need to provide more facts about this individual (including any identifying information or characteristics and date and time he or she denied him care) and the circumstances surrounding this alleged denial of care.

Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved....") (internal quotations, citations omitted); *Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim). As such, Plaintiff may not hold Aviles liable under a theory of *respondeat superior* for his subordinates' failure to provide Plaintiff with medical care.

Plaintiff otherwise fails to state a claim for denial of medical care against Aviles as a supervisor. Plaintiff does not provide any facts showing that Aviles denied him medical care, directed his subordinates to do so, or had knowledge that Plaintiff or inmates in general were being denied medical care and failed to correct the issue. *See A.M. ex rel. J.M.K.*, 372 F.3d at 586. Moreover, Plaintiff fails to provide any facts to suggest that Aviles created deficient policies for the provision of medical care at HCCC and was deliberately indifferent to the risk of constitutional injury resulting from those deficient policies. *See Beers-Capitol*, 256 F.3d at 133–34. For these reasons, Plaintiff fails to state a claim for inadequate medical care claim against Aviles, and the Court dismisses <u>without prejudice</u> this claim for relief pursuant to its screening authority.

For the reasons explained in this Memorandum and Order, the Complaint is dismissed <u>without prejudice</u> in its entirety as to Oscar Aviles. Plaintiff may file an Amended Complaint within 45 days if he can cure the deficiencies in his claims for relief.

**IT IS THEREFORE**, on this 18th day of January 2023,

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (ECF Nos. 1-1) is hereby GRANTED; and it is further

**ORDERED** that the Complaint shall be filed; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(b) and for purposes of account deduction only, the Clerk shall serve a copy of this Order by regular mail upon the Attorney General of the State of New Jersey and the Administrator of Hudson County Correctional Center; and it is further

**ORDERED** that Plaintiff is assessed a filing fee of $350.00 and shall pay the entire filing fee in the manner set forth in this Order pursuant to 28 U.S.C. § 1915(b)(1) and (2), regardless of the outcome of the litigation, meaning that if the Court dismisses the case as a result of its *sua sponte* screening, or Plaintiff's case is otherwise administratively terminated or closed, § 1915 does not suspend installment payments of the filing fee or permit refund to the prisoner of the filing fee, or any part of it, that has already been paid; and it is further

**ORDERED** that pursuant to *Bruce v. Samuels*, 136 S. Ct. 627, 632 (2016), if Plaintiff owes fees for more than one court case, whether to a district or appellate court, under the Prison Litigation Reform Act (PLRA) provision governing the mandatory recoupment of filing fees, Plaintiff's monthly income is subject to a simultaneous, cumulative 20% deduction for each case a court has mandated a deduction under the PLRA; i.e., Plaintiff would be subject to a 40% deduction if there are two such cases, a 60% deduction if there are three such cases, etc., until all fees have been paid in full; and it is further

**ORDERED** that pursuant to 28 U.S.C. § 1915(b)(2), in each month that the amount in Plaintiff's account exceeds $10.00, the agency having custody of Plaintiff shall assess, deduct from Plaintiff's account, and forward to the Clerk of the Court payment equal to 20% of the preceding month's income credited to Plaintiff's account, in accordance with *Bruce*, until the $350.00 filing fee is paid. Each payment shall reference the civil docket numbers of the actions to which the payment should be credited; and it is further

**ORDERED** that the Complaint is dismissed without prejudice in its entirety against Defendant Aviles for failure to state a claim for relief pursuant to the Court's screening authority under § 1915(e); and it is further

**ORDERED** that Plaintiff may submit an Amended Complaint and a request to reopen this matter within 45 days to the extent he can cure the deficiencies in his claims for relief; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Order to Plaintiff by regular U.S. mail and CLOSE this matter accordingly.

_____
Hon. Madeline Cox Arleo
United States District Judge